STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

CHRISTA HALL (CABN 328881)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Christa.Hall@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEX MURILLO,<br><br>    Defendant. | CASE NO. 3:22-CR-00268-SI<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing:   Sentencing<br>Date:       January 20, 2023<br>Time:      12:30 p.m.<br>Courtroom: 1 |

### I.    INTRODUCTION

Alex Murillo ("Defendant") pleaded open to the Court to all eight counts of the indictment charging him with possession with intent to distribute drugs such as fentanyl and methamphetamine of various weights. His sentencing hearing is scheduled for January 20, 2023 before this Court. Assuming defendant meets all safety valve conditions, the government requests the Court sentence defendant to 80 months imprisonment. The government determines a total offense level of 25 and a criminal history category of III. Taken together, defendant's guidelines fall between 70-87 months imprisonment. The Probation Officer determines a similar guidelines range but ultimately recommends a 50-month sentence. *See* Presentence Report, ¶100, pg. 27 ("PSR"). The government's recommendation is on balance with the factors considered under 18 U.S.C. § 3553(a).

## II. FACTS

### a. Prior History[1]

Defendant has an extended history of arrests in the Tenderloin and was on probation following a conviction based on those drug trafficking activities. In October 2019, defendant sold an undercover officer a bindle of cocaine base on Eddy Street between Larkin and Polk Streets in the Tenderloin District. The officer searched defendant incident to arrest immediately after the undercover buy resulted in SFPD seizing over 60 bindles of suspected cocaine base (18 grams gross), 25 bindles of suspected heroin (8.4 grams gross), and 10 twists of suspected cocaine salt (3.4 grams gross) as well as over $250 in case (all quantities are approximate).

In November 2019, an SFPD officer observed defendant engage in a hand-to-hand drug transaction in the Tenderloin District near Eddy and Polk Streets. Officers also observed defendant retrieve drugs from a backpack on the ground. Following defendant's arrest, officers recovered approximately 3 bindles of suspected cocaine base (3 grams gross), 3 bindles of suspected heroin (1.3 grams gross), 1 baggie of suspected methamphetamine (3.8 grams gross), and plastic baggies. Officers also recovered over $500 in case from defendant's pockets.

In December 2019, an SFPD officer observed defendant manipulating small pea-sized items in his hand on Eddy Street in the Tenderloin District, indicating drug trafficking. Defendant tried to avoid the officer but was stopped and searched, resulting in the seizure of 6 bindles of suspected cocaine base (2.4 grams gross) and 3 bindles of heroine (1.1 grams gross). The officer also noted that defendant had a 150-yard active stay-away order from 640 Eddy Street and was in clear violation of the order. Defendant initially provided an alias ("Brian Luis Alvarez") and false date of birth which he admitted after his was placed under arrest.

In August 2020, during the execution of a search warrant at an address in Oakland associated with another suspected drug dealer, SFPD officers encountered defendant exiting the residence. Officers recovered indicia of defendant and another individual (A.R.) that included a backpack containing 1 bindle of suspected heroin, 9 baggies of suspected methamphetamine, and 4 bindles of suspected

---

[1] This information is based on SFPD incident reports that have been produced in discovery.

all

cocaine base and over $220 in cash. A.R. stated the backpack belonged to him. During a search of a vehicle associated with A.R., officers found a backpack with suspected narcotics including fentanyl (10 grams gross), cocaine base (135 grams gross), and methamphetamine (66 grams gross). In other rooms in the residence, officers found empty press lock baggies and over $400 in cash.

In October 2020, defendant sold an undercover officer two rocks of suspected cocaine base for $20. This took place in the Tenderloin District near Hyde and Grove Streets. A search following the arrest after the buy resulted in seizure of over $1,000 in cash in a satchel that defendant was wearing. The undercover deal began with an encounter at the top of the BART staircase.

In September 2021, SFPD officers stopped defendant in the Tenderloin District because he matched a description of a suspect with a gun, and while a search of defendant did not result in the seizure of a gun or drugs, officers concluded that defendant had an outstanding failure to appear warrant and was in violation of a stay away order for the area of Hyde and Grove Streets. The location was near the Civic Center BART entrance.

In December 2021, also in the Tenderloin District, defendant sold an undercover officer suspected cocaine base. Based on the undercover officer's observations, the officer concluded that defendant was working with a second individual holding defendant's stash. After searching defendant, officers located over $500 in cash. After searching the other individual, officers located suspected fentanyl (27.6 grams gross), suspected heroin (4.6 grams gross), suspected methamphetamine (9.5 grams gross), and suspected cocaine base (5 grams gross).

      **b.  Current Conduct**

          1.  Defendant Sold Approximately 2.0 Grams (Gross) of Fentanyl Through a Controlled Buy on March 23, 2022

On March 23, 2022, TFO Gomez was on duty and assigned to the Narcotics Division and observed a known/documented narcotics trafficker (defendant) on the BART stairs at the northeast corner of 8th and Market Streets. She knew him from numerous prior police contacts and narcotics related arrests in both San Francisco and Oakland. She often observed defendant in the area of 8th and Market Streets in the morning and early afternoon hours. This is an area in which narcotics are frequently bought and sold at all hours of the day and night.

An undercover officer ("UC-1") made contact with defendant in the area of United Nations Plaza. The two negotiated a deal of forty dollars for fentanyl. Defendant told UC-1 that he was going to hook him up with two grams and stated that the fentanyl he was selling was "strong shit." Defendant handed UC-1 several chunks of a pressed off-white powder substance, which based on the training and experience of UC-1, he believed to be fentanyl. The UC-1 gave defendant $40.00 of city funds in the form of United States currency. UC-1 thanked defendant and asked defendant for his phone number so he could buy more drugs from him in the future. Defendant gave UC-1 his phone number, and UC-1 used his SFPD department issued cell phone to text defendant his name, "Mikey." Defendant handed UC-1 his cell phone and told UC-1 to save his number in defendant's phone. UC-1 took defendant's cell phone and observed the text message he had just sent him, confirming it was the correct number. UC-1 then saved his number in defendant's phone as requested.

SFPD officers subsequently weighed the suspected fentanyl (approximately 2.0 grams gross). SFPD officers also conducted a presumptive test using an SFPD-issued TruNarc Analyzer on the suspected fentanyl, with positive results for the presence of fentanyl.

      2. Defendant Sold Approximately 5.2 Grams (Net) of Fentanyl Through a Controlled Buy on April 7, 2022

On April 07, 2022, UC-1 contacted defendant and told him that he wanted to buy $100 worth of fentanyl from him for "his cousin." UC-1 and UC-2 approached defendant and UC-1 introduced UC-2 as his cousin. The parties negotiated a sale of "yellow" fentanyl for $100. Defendant then placed his backpack on the floor and removed a large plastic bag containing multiple individual chunks of what appeared to be fentanyl. Defendant handed UC-2 multiple chunks of the suspected fentanyl. Defendant then went into his backpack and told UC-2 to "try this" and removed another large plastic bag of chunks of suspected fentanyl that was purple in color and handed UC-2 some purple fentanyl.

UC-2 provided defendant with $100 of city funds in cash, which defendant accepted. UC-2 then asked defendant for his phone number. Defendant opened his phone and showed UC-2 his cell phone number. UC-2 was in possession of an undercover cell phone. UC-2 texted the phone number provided by defendant on the undercover cell phone, and UC-2 confirmed that defendant received the text message on his phone. Defendant then handed UC-2 his phone and asked him to save his name into his

phone, which UC-2 did so. UC-2 told defendant that he would contact him to purchase further narcotics, and defendant told UC-2 to come back.

SFPD officers subsequently weighed the suspected fentanyl, which consisted of white and purple colored chunky powdery substance (approximately 5.2 grams net). SFPD officers also conducted a presumptive test using an SFPD-issued TruNarc Analyzer on the suspected fentanyl, with positive results for the presence of fentanyl.

      3. Defendant Sold Approximately 55 Grams (Net) of Fentanyl Through a Controlled Buy on April 21, 2022

On April 20, 2022, SFPD texted defendant via the undercover cell phone and negotiated the purchase of two ounces of fentanyl, one purple and one yellow, for the following day. Defendant confirmed a price of $750. On April 21, 2022, UC-2 and defendant met in United Nations Plaza. UC-2 handed defendant $750 of city funds, which defendant accepted. UC-2 and defendant shook hands before UC-2 left the area.

SFPD officers subsequently weighed the suspected fentanyl, which consisted of white colored chunky powdery substance (approximately 28.3 grams gross). SFPD officers weighed the suspected fentanyl, which consisted of purple colored chunky powdery substance (approximately 27.8 grams gross). SFPD officers weighed the suspected fentanyl, which consisted of a pink/red multi-colored chunky substance (approximately 0.7 grams net). SFPD officers also conducted presumptive field tests using the SFPD-issued TruNarc Analyzer on the three different colored samples of suspected fentanyl, with results for the presence of mannitol. Mannitol is a common cutting agent which is often mixed with fentanyl to increase the yield. Pure fentanyl is not commonly sold at the street level. Fentanyl is typically cut with a very high ratio of mannitol (or other cutting agent) to fentanyl.

On April 25, 2022, the Alameda County Sheriff's Office Crime Lab tested one of the three baggies containing suspected fentanyl.  The report determined the substance tested was fentanyl with a net weight of 27.86 grams. Subsequent testing of a second and third bag of fentanyl sold by defendant in this UC operation revealed that they contained fentanyl and weighed 26.8 grams (net) and 0.75 grams (net) respectively.

4. **Defendant Sold Approximately 14 Grams (Net) of Fentanyl and Approximately 51 Grams (Net) of Methamphetamine Through a Controlled Buy on May 12, 2022**

On May 11, 2022, SFPD texted defendant via the same undercover cell phone and negotiated the purchase of two ounces of methamphetamine and one ounce of fentanyl by using the terms "crystal" for methamphetamine and "yellow" for fentanyl. In a previous text message conversation between the undercover cell phone and defendant, defendant quoted a price of $200 per ounce for methamphetamine.

On the morning of May 12, 2022, defendant texted the undercover cell phone stating that he was on his way to San Francisco, to meet at the same spot, and to see when UC-2 would be arriving. UC-2 called defendant and confirmed the arranged narcotics deal of two ounces of methamphetamine and one ounce of fentanyl. UC-2 informed defendant that he had $1,000 and requested additional fentanyl. Defendant advised UC-2 that he was near the coffee shop.

The parties met and UC-2 and defendant agreed to two ounces of methamphetamine and one ounce of fentanyl for $800.00. Defendant handed UC-2 a knotted clear plastic bag which contained four additional knotted plastic bags inside, two that contained suspected methamphetamine and two that contained suspected fentanyl. UC-2 handed defendant $800 in city funds and Murillo accepted. Murillo wrote into his phone in Spanish, which translated the conversation into English, and had UC-2 read what he wrote on his phone. The message said, next time let me know the total amount so I can have it all for you. UC-2 and defendant shook hands and hugged before UC-2 walked away from the area.

SFPD officers subsequently weighed the suspected fentanyl, which consisted of white chunky powdery substance (approximately 28.8 grams gross). SFPD officers conducted a presumptive field test using the SFPD-issued TruNarc Analyzer on the suspected fentanyl, which tested clear, with the presence of mannitol. SFPD officers weighed the suspected methamphetamine, which consisted of two knotted plastic bags of a white crystal substance (approximately 51.2 grams gross). SFPD officers conducted a presumptive field test using the TruNarc Analyzer on the suspected methamphetamine, with positive results for the presence of methamphetamine.

Alameda County Sheriff's Crime Laboratory tested the fentanyl and methamphetamine on June 9, 2022. The results confirmed the narcotics were positive for methamphetamine and fentanyl. The

fentanyl weighted 14 grams net. The two baggies of methamphetamine were tested and weighed separately resulting in a total net weight of 50 grams (28.03 + 22.06).

        5. **Defendant Sold Approximately 56.53 Grams (Net) of Fentanyl and Approximately 75.7 Grams (Net) of Methamphetamine Through a Controlled Buy on June 8, 2022**

On June 8, 2022, SFPD texted defendant using the undercover phone utilized by UC-2 in the early morning hours and negotiated the purchase of two ounces of fentanyl and three ounces of methamphetamine. Defendant confirmed a price of $1400 for five ounces in total and agreed to meet in front of the coffee shop in United Nations Plaza.

UC-2 met with defendant near the Civic Center Bart. Defendant was with an unknown male wearing a black backpack that defendant was previously seen wearing. The agent believed the unknown male was acting as a "holder" for defendant, holding the bulk of defendant's narcotics. Defendant reached into the backpack that the unknown male was wearing and retrieved a clear plastic bag containing suspected fentanyl and suspected methamphetamine, and he handed it to UC-2. UC-2 handed defendant $1400 cash and defendant accepted. Defendant and UC-2 shook hands and walked away from one another. A few minutes after the transaction, defendant texted the UC-2's undercover phone, "Hthan you."

SFPD subsequently weighed the suspected fentanyl, which consisted of white chunky powdery substance in two knotted plastic bags. The suspected fentanyl weighed approximately 57.7 grams (gross). SFPD officers conducted a presumptive field test using the SFPD-issued TruNarc Analyzer on the suspected fentanyl, which tested clear, with the presence of mannitol. SFPD weighed the suspected methamphetamine, which consisted of one knotted plastic bag of a white crystal substance. The suspected methamphetamine weighed approximately 75.7 grams (gross). SFPD officers conducted a presumptive field test using the TruNarc Analyzer on the suspected methamphetamine, which tested presumptively positive for the presence of methamphetamine.

On June 15, 2022, the Alameda County Sheriff's Office Crime Lab examined the methamphetamine and one of the baggies of fentanyl recovered from this buy. The suspected methamphetamine was determined to contain methamphetamine with a net weight of 73.19 grams. The

suspected fentanyl was determined to contain 4-ANPP and Fentanyl with a net weight of 28.53 grams. An Alameda County Sherriff's Office test for the second fentanyl baggie determined that it had a net weight of 28.02 grams of fentanyl.

      6.    **Defendant Was Arrested and in Possession of Approximately 328.7 Grams (Gross) of Suspected Fentanyl and Approximately 105.7 Grams (Gross) of Methamphetamine During a Controlled Buy on June 21, 2022**

An undercover officer texted defendant on June 20, 2022, asking to buy 3 oz. of "yellow" and 3 oz. of "rainbow." Defendant responded the price would be $2,400. On June 21, 2022, SFPD and DEA went to defendant's home address to do one last buy and arrest defendant. Officers also planned to execute a home search warrant at defendant's Oakland apartment. On the morning of June 21, 2022, Officers observed defendant exit the front gate of his apartment building with a cell phone in his hand and a backpack on his back. An officer made contact with defendant and placed him under arrest without incident. A search incident to his arrest uncovered the following in his backpack:

- Suspected fentanyl; TruNarc = mannitol; 328.7 grams gross, which was subsequently confirmed to be fentanyl
- Suspected cocaine base; TruNarc = cocaine base; 47.1 grams gross
- Suspected heroin; not tested; 37.3 grams gross
- Suspected methamphetamine; TruNarc = meth; 105.7 grams gross
- Digital scale
- $41 cash

An officer seized the cell phone defendant was carrying. The officer called the number defendant provided to both UC's and defendant's cell phone lit up displaying an incoming call, confirming defendant still possessed the cell phone with the same number.

### III.    THE SENTENCING GUIDELINES CALCULATION AND THE PLEA

The defendant pleaded guilty to Counts One through Eight of the Indictment on October 7, 2022. For sentencing, the government determines a total offense level of 25 and a criminal history category of III. Taken together, defendant's guidelines fall between 70-87 months imprisonment. The government requests the Court sentence defendant to 80 months imprisonment.

|  | U.S.S.G. Section | Level/Points |
|---|---|---|
| Base Offense Level | § 2D1.1(c)(5) | 30 |
| Acceptance of Responsibility | §3E1.1 | -3 points |
| Safety Valve | § 2D1.1(b)(18) (assuming all safety valve conditions are met) | -2 |
| Total Adjusted Offense Level |  | 25 |
| Criminal History Category |  | III |
| **Range** |  | **70-87 months** |

## IV.   DISCUSSION

### a. Legal Standards

The Court should impose a sentence sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also* 18 U.S.C. § 3553(a). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the advisory Guidelines. *Id*. After determining the appropriate advisory Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness considering the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 245 (2005), this Court may consider any of the sentencing factors set forth in 18 U.S.C. § 3553(a) when imposing sentence, irrespective of the sentencing guidelines calculation applicable to the offense of conviction. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).

### b. Sentencing Recommendation

The government requests the Court sentence defendant to 80 months custody. This sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and provides the defendant with needed correctional treatment. 80 months custody is based on a total offense level of 25 and a criminal history category of III. This places the defendant in the guidelines range of 70-87 months imprisonment.

#### i. The nature and circumstances of the offense

Defendant's prior and current conduct show that defendant is a drug dealer who commutes from the East Bay to the Tenderloin District and distributes deadly drugs on our streets routinely. Defendant has also repeatedly ignored court orders. Moreover, his previous involvement with law enforcement and the judicial system has left him undeterred. This case involves six separate offenses under the same circumstances. Defendant sold fentanyl on numerous occasions. Fentanyl is a deadly drug and with defendant's level of experience selling in the Tenderloin District, it is likely he is aware of how deadly this drug is, and yet he continues to sell it anyway. In fact, during his discussions during one of his sales, defendant promoted his drugs as "strong shit."

Defendant is directly contributing to the "ground zero" of an "opioid overdose crisis" in and around the Tenderloin neighborhood that kills our community's residents when he sells fentanyl and other drugs on the streets.[2] "We are losing over two people a day to drug overdoses, mostly to fentanyl, and mostly in the Tenderloin and SoMa. This is a public health emergency demanding a crisis level response, with massive urgency, coordination, and determination to confront this epidemic."[3] The nature and circumstances of these offenses are seriously and potentially deadly.

#### ii. The history and characteristics of the defendant

In addition to defendant's prior arrests, defendant was on active probation in San Francisco and has been since his November 2020 conviction for accessory after the fact in violation of California Penal Code Section 32. Defendant has also been subject to multiple stay away orders in the Tenderloin over

---

[2] Erin McCormick, *The daily battle to keep people alive as fentanyl ravages San Francisco's Tenderloin*, THE GUARDIAN, April 23, 2022, https://www.theguardian.com/us-news/2022/apr/23/sanfrancisco-homelessness-street-team-fentanyl (last visited May 6, 2022).

[3] *Supra*, note 6.

U.S. SENTENCING MEMORANDUM                10
3:22-CR-00268-SI

that time period. The offenses in this charged case occurred over a few months in 2022 with his ultimate arrest taking place on June 22, 2022. None of this has prevented defendant from continuing to commute to the Tenderloin to sell dangerous drugs. Defendant is a drug dealer who does not care about the law or this community and has continued to feed the streets of San Francisco with deadly fentanyl.

Notwithstanding, defendant also successfully completed a proffer with the government as it applies to the Safety Valve provisions of the First Step Act.

      iii.   The need for the punishment to reflect the seriousness of the offense, promote respect for the law, and provide just punishment

Six and one-half years imprisonment is a punishment that reflects the seriousness of this offense. This will be defendant's longest sentence. This sentence sends a signal to others considering or actively selling fentanyl in the Tenderloin District that there will be serious consequences.

V.   **CONCLUSION**

The government respectfully requests the Court sentence defendant to 80 months custody, to be followed by 4 years, and forfeiture.

DATED: January 14, 2023　　　　　　　　　　　　　　Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*Christa Hall*
CHRISTA HALL
Assistant United States Attorney